1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RENE CAZARES,

11           Petitioner,              No. CIV S-05-0625 FCD DAD P

12      vs.

13   W. J. SULLIVAN, et al.,

14           Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18   entered against him on October 24, 2002, in the Sacramento County Superior Court on charges of

19   assault and aggravated assault on a correctional officer and possession of a weapon by a prison

20   inmate.  Petitioner was sentenced to two consecutive terms of 25 years to life in state prison.  He

21   seeks relief on the grounds that: (1) his trial counsel rendered ineffective assistance; (2) the trial

22   court erroneously denied him the right to represent himself; and (3) his sentence of fifty years to

23   life constitutes cruel and unusual punishment under the California Constitution.  Upon careful

24   consideration of the record and the applicable law, the undersigned will recommend that

25   petitioner's application for habeas corpus relief be denied.

26   /////

                                         1

PROCEDURAL AND FACTUAL BACKGROUND[1]

Rene Cazares (defendant) was convicted by a jury of one count of battery upon a non-confined person (Pen.Code, § 4501.5[2] (count one)), one count of gassing a peace officer (§ 4501.1 (count two)), and one count of being a prisoner in possession of a weapon (§ 4502, subd. (a) (count three)).  The jury also found that defendant had suffered prior serious felony convictions of robbery (§§ 211, 667, subds.(b)-(i), 1170.12) and attempted robbery (§§ 664/211, 667, subds.(b)-(i), 1170.12).  Sentenced to two consecutive 25-year-to-life terms on counts one and three,[3] defendant appeals, and argues: (1) he received ineffective assistance of counsel in the preparation of his defense; (2) his motion to represent himself was improperly denied; and (3) his sentence constitutes cruel and unusual punishment.  For the reasons stated below, we shall conclude these arguments lack merit, and therefore affirm the judgment.

* * *

On September 19, 1999, Robert Williamson III, a correctional officer at California State Prison, Sacramento, was escorting defendant from his cell in administrative segregation to the exercise yard.  While enroute, defendant struck up a conversation with several inmates from the general population, which was against prison rules.  Defendant began walking toward an open door that led to a kitchen where general population inmates were preparing food.  Williamson twice ordered defendant to continue moving.  After defendant twice refused, Williamson took hold of defendant's arm.  Defendant muttered something to Williamson,

---

[1]  The following summary is drawn from the December 30, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), designated as Lodged Doc. 4 in support of the Answer, at pgs 1-3.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).  "Clear and convincing evidence " within the meaning of § 2254(e) "requires greater proof than preponderance of the evidence" and must produce "an abiding conviction" that the factual contentions being advanced are "highly probable."  Cooper v. Brown, 510 F.3d 870, 919 (9th Cir. 2007) (quoting Sophanthavong v. Palmateer, 378 F.3d 859, 866 (9th Cir. 2004)).  Although petitioner contends that the opinion of the California Court of Appeal is "wrong and misleading" (Traverse at 21), he has not demonstrated that the appellate court's opinion is incorrect in any material respect and has not overcome the presumption of correctness with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

[2]  Undesignated section references are to the Penal Code.

[3]  The court reduced count two to a misdemeanor (§ 17, subd. (b)) and sentenced him to a 365-day county jail term, to be served concurrently to the prison sentences.

turned around, and head butted him two times, knocking Williamson into a broom closet.  Williamson shouted for help and attempted to subdue defendant.  Correctional Officer Wesley Hupe assisted Williamson.  Defendant was kicking his legs and moving his body.  Hupe grabbed hold of defendant's legs while other correctional officers held the rest of his body.  After defendant was subdued, and while he was being escorted to a holding cell by two correctional officers, defendant spit in the face of Correctional Officer Mark Scott.  Defendant's assault on Williamson formed the basis of count one, while the spitting incident formed the basis of count two.

Approximately two months later, on November 25, 1999, defendant was searched following time in the exercise yard.  The officer conducting the search, Brad Whitaker, discovered a three and one-half inch piece of hard plastic, sharpened at one end and wrapped in white tissue and cellophane, secreted in defendant's sock.

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on

3

the merits in State court proceedings unless the adjudication of the claim -

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

      The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim

/////

de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

1167 (9th Cir. 2002).

II.  Petitioner's Claims

     A.  Ineffective Assistance of Counsel

        Petitioner's first claim is that his trial counsel rendered ineffective assistance.

Specifically, he argues that trial counsel: (1) failed to investigate and present witnesses that could

have provided exculpatory information; (2) failed to investigate the facts of the case; (3) "was not

consistent in showing up" for court hearings; (4) did not visit or consult sufficiently with

petitioner in order to get petitioner's input into the defense strategy; (5) refused to file motions

that petitioner requested him to file; (6) forced petitioner to proceed to trial against his wishes

when counsel had not "done any investigating nor filed any motions" and was therefore not ready

for trial; (7) refused to let petitioner "address the court;" and (8) "acted unethically in every way

possible."[4]  (Petition filed November 1, 2006 (Pet.), at consecutive pgs. 5, 7 & 12.)

        1.  State Court Opinion

        The California Court of Appeal rejected petitioner's claims of ineffective

assistance of counsel, reasoning as follows:

> Following his conviction, defendant filed a motion for new trial
> based in part on the claim that trial counsel was ineffective because
> he failed to locate and interview inmates and correctional officers
> who may have been percipient witnesses to the incidents giving
> rise to the criminal charges.  The court denied the motion because
> defendant had failed to offer any factual support for his claims, and
> thus had failed to show how counsel's representation had
> prejudiced him.  On appeal, defendant renews his claim that trial
> counsel was ineffective because he failed to interview potential
> defense witnesses.  This argument lacks merit.

/////

---

    [4]  Petitioner was initially represented by a deputy public defender, but his family
subsequently hired a private law firm to represent him.  (Reporter's Transcript on Appeal (RT) at
42, 50-51, 375; Exhibits to Traverse at pgs. 93-94 of 138.)  The firm apparently assigned two
attorneys to the case.  Petitioner appears to be claiming that all three trial counsel rendered
ineffective assistance for the reasons described in his petition.

In order to obtain a reversal based on a claim of ineffective assistance of counsel, defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's unprofessional errors, a determination more favorable to defendant would have resulted. [Citations.]"  (People v. Rodrigues (1994) 8 Cal.4th 1060, 1126.)

When an ineffective assistance of counsel claim is raised on appeal, "a reviewing court will reverse a conviction ... 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.'"  (People v. Frye (1998) 18 Cal.4th 894, 979-980, quoting People v. Fosselman (1983) 33 Cal.3d 572, 581.)  "'If the record contains no explanation for the challenged behavior, an appellate court will reject the claim of ineffective assistance "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."  (People v. Pope (1979) 23 Cal.3d 412, 426.)'"  (People v. Hart (1999) 74 Cal. App.4th 479, 486, quoting People v. Kipp (1998) 18 Cal.4th 349, 366-367.)

In the present case, defendant has failed to demonstrate either that trial counsel neglected to interview potential witnesses or that the testimony of such unidentified witnesses would have assisted his defense.  In his motion for new trial, defendant identified one witness – a correctional officer by the name of Fowler – who, it was asserted, might have offered exculpatory evidence regarding counts one and two.  However, defendant did not show that trial counsel had failed to interview him, or that the officer's testimony would have led to a different result.  In fact, the minutes from trial indicate that this potential witness was brought to the attention of the court.  The minutes recite that the court contacted the prison and was informed there were two officers with the surname "Fowler" who worked at Folsom on September 19, 1999.  One did not work in the facility where defendant was housed, and the other was not on duty on September 19.  The latter officer nonetheless was summoned to court, where he confirmed that he did not work on September 19, 1999, and therefore did not witness the incidents giving rise to counts one and two.

The rest of the record also fails to support defendant's argument.  On October 22, 2001, during voir dire of the jury, the court held a Marsden[5] hearing to consider defendant's claim that he was being inadequately represented.  Counsel represented to the court that he had discussed defendant's case with all of defendant's previous attorneys assigned to the case, and that the attorneys and their investigators had been in contact with defendant regarding his case.

---

[5] People v. Marsden (1970) 2 Cal. 3d 118.

1                At another <u>Marsden</u> hearing held after the conclusion of trial, defendant reiterated his concerns about inadequate investigation of a witness list he had provided to defense counsel.  In response, defendant's trial counsel stated:  "I spoke with Mr. [Alan] Whisenhand, who was the attorney at the time for Mr. Cazares, on this subject.  And he indicated that his investigation could not reveal the witness that would be able to testify to anything relevant.["]

"He had the list.  He did the research.  In fact, this case was set for trial, as the record reflects.  At one point quite sometime ago Mr. Whisenhand, being the attorney, and he was granted a continuance on the basis that he wanted to try and investigate these witnesses, talk to them, find out who the officer was or officers were who were on duty on the days in question.["]

"He did that and related to me that he could not find anyone that was a witness.  And, moreover, the problem he had was that with regard to the incident where there was head-butting there was a problem with the potential witnesses weren't able to be in the view [ sic ].  They just plain couldn't see what happened at the time.  And so he related to me that although there were some people nearby, there wasn't anyone who saw what happened."

Since the only potential witness identified by defendant was not present on September 19, 1999, and the record otherwise discloses that counsel interviewed other potential witnesses and concluded they could not provide exculpatory evidence, defendant's claim that counsel was ineffective fails.  (<u>See</u> <u>People v. Medina</u> (1995) 11 Cal.4th 694, 773 [on appeal, ineffective counsel cannot be established by speculation regarding testimony of potentially available witnesses].)

(Opinion at 3-7.)[6]

/////

------

      [6]  Petitioner objects to the description by the California Court of Appeal of what transpired at the <u>Marsden</u> hearing held after the conclusion of trial.  (Traverse at 3-4, 6-7.)  Petitioner denies that he gave a witness list to any of his attorneys, asserts that he did not know of the existence of a list of potential witnesses until he received his legal materials from his trial attorney after he was convicted, and states that any concerns about a witness list were expressed by the prosecutor and not by defense counsel.  (<u>Id.</u>)  Petitioner has lodged a transcript of the <u>Marsden</u> hearing in question.  (Exhibits to Traverse at pgs. 90-103 of 138.)  The transcript supports the state court's description of what was said by petitioner's attorney at that hearing.  (<u>Id.</u> at 95-96.)  In addition, the trial court accepted petitioner's representation that he had never seen the list of possible witnesses.  (<u>Id.</u> at 102.)  The court also notes that at the conclusion of the hearing, the trial court appointed new counsel for petitioner to investigate possible percipient witnesses and to file a motion for new trial on petitioner's behalf, if appropriate.  (<u>Id.</u> at 102-03.)

1       2. <u>Legal Standards</u>

2       The Sixth Amendment guarantees the effective assistance of counsel.  The United

3 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

4 <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To support such a claim, a petitioner must first

5 show that, considering all the circumstances, counsel's performance fell below an objective

6 standard of reasonableness.  <u>Id.</u> at 687-88.  After a petitioner identifies the acts or omissions that

7 are alleged not to have been the result of reasonable professional judgment, the court must

8 determine whether, in light of all the circumstances, the identified acts or omissions were outside

9 the wide range of professionally competent assistance.  <u>Id.</u> at 690; <u>Wiggins v. Smith</u>, 539 U.S.

10 510, 521 (2003).  Second, a petitioner must establish that he was prejudiced by counsel's

11 deficient performance.  <u>Strickland</u>, 466 U.S. at 693-94.  Prejudice is found where "there is a

12 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

13 would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to

14 undermine confidence in the outcome."  <u>Id.</u>  <u>See also</u> <u>Williams</u>, 529 U.S. at 391-92; <u>Laboa v.</u>

15 <u>Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether

16 counsel's performance was deficient before examining the prejudice suffered by the defendant as

17 a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the

18 ground of lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280

19 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

20       3. <u>Analysis</u>

21       Petitioner's primary argument is that his trial counsel rendered ineffective

22 assistance by failing to investigate and interview possible percipient witnesses to the assault

23 against Officer Williamson.  The court has carefully reviewed the entire record of these

24 proceedings, including all supplemental information and exhibits attached to and in support of

25 the traverse.  As explained below, although petitioner was given numerous opportunities by the

26 trial court to locate exculpatory witnesses, he was unable to do so.  Accordingly, petitioner

1   cannot demonstrate that his trial attorney's deficient performance resulted in him suffering any

2   prejudice.

3          Petitioner raised his concerns about trial counsels' failure to investigate possible

4   percipient witnesses throughout the state court proceedings, by way of written motions and oral

5   requests in open court.  In response, the trial judge granted at least one trial continuance so that

6   defense counsel could investigate whether any witnesses could provide exculpatory testimony.

7   (RT at 64.)  The judge also took it upon himself to obtain the appearance in court of Officer

8   Fowler, a possible percipient witness identified by petitioner.  (Opinion at 5; Reporter's

9   Transcript on Appeal (RT) at 177.)  After the post-trial <u>Marsden</u> hearing, the trial judge even

10   appointed a new attorney for petitioner for the sole purpose of investigating possible percipient

11   witnesses and filing any appropriate motion for a new trial.  (RT at 347-48.)  Petitioner

12   subsequently filed a motion for new trial, but still failed to identify any witnesses who could

13   provide testimony exculpating him. (CT at 168-78.)[7]

14          At the sentencing hearing, petitioner's counsel asked for yet another a continuance

15   so that his investigator could interview possible exculpatory witnesses.  (RT at 390-91.)  The

16   judge denied the request for continuance but informed petitioner's counsel that if he found

17   "cognizable or reasonably cognizable evidence that is reasonably exculpatory," he could file an

18   appropriate motion within 120 days of the sentencing  (<u>Id.</u> at 392.)  Subsequently, petitioner sent

19

20          [7] In denying the motion for new trial, the trial judge stated as follows:

21          The Court has considered the motion for new trial and will now
22          deny the motion.  The, uh, first allegation is that the attorney, Mr.
             Schutmaat, neglected to adequately investigate the case, but the
23          moving papers failed to identify who the witnesses are, nor is there
             attached to the motion any reasonable documentary evidence from
24          these witnesses that would state, had they testified, what they
             would say and how those witnesses would have made a difference
25          in the ultimate outcome.  Accordingly, the motion is denied on that
             ground.

26   (RT at 376.)

1   a letter to the trial judge asking that he reconsider petitioner's sentence. (Supplement to

2   Traverse, filed January 28, 2008, at 460.) The judge informed petitioner by return letter that,

3   within 120 days of the sentencing proceedings, his post-trial attorney could "request the Court to

4   recall your sentence under Penal Code section 1170 if there is sufficient new evidence to do so."

5   (Id. at 461.) No such motion was ever filed on behalf of petitioner. The record also reflects that

6   the investigator employed post-trial by petitioner's counsel interviewed or contacted 18 inmates

7   who were identified as potential witnesses for the defense, but discovered that none of those

8   persons had relevant information. (Id. at 464-89.) The foregoing describes the extensive but

9   unsuccessful efforts engaged in by the trial court and various defense counsel acting on

10  petitioner's behalf to find percipient witnesses who could present testimony exculpating

11  petitioner.

12          Petitioner cannot meet his burden of showing ineffective assistance of counsel by

13  presenting "mere conclusory statements." United States v. Schaflander, 743 F.2d 714, 721 (9th

14  Cir. 1984). Rather, he must tender affidavits from the witnesses who he contends his counsel

15  neglected to interview or call, showing the helpful testimony for the defense they could have

16  presented. Petitioner has failed to do so. Although petitioner speculates that someone might

17  have been a helpful percipient witness, he does not provide the names of any witnesses, a

18  description of what they would have said, or any indication that any witnesses would have been

19  willing to testify at his trial.[8] Under those circumstances, petitioner cannot demonstrate that his

20  counsel's alleged failure to investigate was detrimental to the defense. See Wildman v. Johnson,

21  261 F.3d 832, 839 (9th Cir. 2001) (speculation that an expert could be found and would testify at

22  trial insufficient to establish prejudice); Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001)

23  (no ineffective assistance where petitioner did "nothing more than speculate that, if interviewed,"

24  _____

25          [8] One of the exhibits to petitioner's traverse is a list of inmates and correctional
    personnel who, according to petitioner, may have been in the area at the time of the assault.
26  (Exhibits to Traverse at pp. 97 & 99 of 139.) However, there is no evidence that any of these
    people saw what happened or that their testimony would have been favorable to petitioner.

a witness might have given helpful information); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the record that an alibi witness actually existed and petitioner failed to present an affidavit establishing that the alleged witness would have provided helpful testimony for the defense); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what a proposed witness would say is not enough to establish prejudice); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim rejected where he presented no evidence concerning what counsel would have found had he investigated further, or what lengthier preparation would have accomplished); Ceja v. Stewart, 97 F.3d 1246, 1255 (9th Cir. 1996) (no ineffective assistance of counsel where petitioner failed to explain "what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds");  United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffective assistance claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing). Cf. Lord v. Wood, 184 F.3d 1083, 1085 (9th Cir. 1999) (petitioner granted relief on his ineffective assistance of counsel claim where counsel failed to personally interview a specific witnesses whose proposed testimony, if believed, would have cleared petitioner of murder). Here, because petitioner has failed to demonstrate prejudice, he is not entitled to relief on his claim that his trial counsel rendered ineffective assistance by failing to adequately investigate or discover witnesses.

As described above, petitioner also claims that his trial counsel rendered ineffective assistance by failing to appear for court hearings, failing to adequately discuss the case with petitioner, failing to file appropriate motions, proceeding to trial unprepared, refusing

1  to allow petitioner to address the trial court, and acting unethically.  Petitioner has failed to

2  demonstrate prejudice with respect to any of these claims.

3  First, petitioner suggests his trial counsel should have filed motions to continue

4  the trial of his case.  (Traverse at 13-15.)  The record reflects that on the first day of jury voir

5  dire, "the court denied three defense motions to continue the trial, one filed by trial counsel and

6  two by [petitioner] himself."  (Opinion at 7.)  Accordingly, it appears that a motion to continue

7  the trial was filed by petitioner's counsel.  In any event, petitioner has failed to demonstrate that a

8  continuance of his trial would have changed the outcome of the proceedings.  Petitioner also

9  faults his trial counsel for not "fully demurring/rebutting/arguing/challenging and/or by filing

10  995, 1538.5 and other legal motions to dismiss and or to exclude/exculpate/exonerate (or to

11  prove) elements of lesser allege charge crime(s)."  (Traverse at 20.)  However, petitioner has

12  failed to demonstrate that even if such motions had been pursued that they would have proven to

13  be meritorious.  Conclusory allegations such as those leveled by petitioner here do not establish

14  prejudice.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations

15  which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting

16  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)); Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir.

17  2000) (an attorney's failure to make a meritless objection or motion does not constitute

18  ineffective assistance of counsel) (citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985));

19  Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never

20  be deficient performance").

21  Petitioner also claims that his trial counsel would not let him personally address

22  the trial court.  The record reflects that petitioner spoke to the trial judge in open court on

23  numerous occasions and was allowed to fully explain his complaints regarding trial counsels'

24  failure to obtain exculpatory witnesses.  (See, e.g, RT at 43-53, 64-67.)  Petitioner has failed to

25  demonstrate that the result of the proceedings in his case would have been different if his trial

26  counsel had allowed him to address the trial judge on any matter.

1        Petitioner states that his trial counsel failed to appear for court appearances on

2   several occasions and that the trial judge told petitioner that his attorneys "better start showing up

3   for my court hearings." (Traverse at 9.) The record substantiates petitioner's claim that defense

4   counsel made no appearance at least at two hearings. (Clerk's Transcript on Appeal (CT) at 8.)

5   However, petitioner has failed to explain how his trial counsel's non-appearance at those pretrial

6   hearings resulted in prejudice at his trial and the record does not reflect any such prejudice.

7        Finally, petitioner has failed to demonstrate that his various trial counsel acted

8   "unethically" or that they proceeded to trial even though they were not prepared to do so.

9   Petitioner has also failed to show that his counsels' failure to meet with him more often affected

10  the outcome of the trial. In short, petitioner has failed to demonstrate "a reasonable probability

11  that, but for counsel's unprofessional errors, the result of the proceeding would have been

12  different." Strickland, 466 U.S. at 694. Accordingly, petitioner is not entitled to relief on his

13  claims of ineffective assistance of trial counsel.

14      B.  Right to Self-Representation

15       Petitioner claims that the trial court erroneously denied his motion to represent

16  himself. (Pet. at 5.) Petitioner states that he did not request self-representation for purposes of

17  delay. (Traverse at 23.) Rather, he explains that he was "thwarted in his attempt to present his

18  only viable defense" because his trial attorneys had failed to secure any percipient witnesses by

19  the time of trial. (Id.) Petitioner states that "[u]nder these circumstances, it was entirely

20  reasonable to take the only means available to him after his motion to substitute counsel was

21  denied, the route of self-representation." (Id. at 24.)

22       The California Court of Appeal rejected petitioner's arguments in this regard,

23  reasoning as follows:

24          Defendant next contends the trial court erroneously denied as
            untimely his motion for self-representation filed pursuant to Faretta
25          v. California (1975) 422 U.S. 806 (Faretta). The record regarding
            this claim discloses that the court called defendant's case for trial
26          on October 17, 2001, and continued the matter one day so

13

defendant could dress in street clothes.  Jury voir dire commenced on October 18, 2001.  On that day, the court denied three defense motions to continue the trial, one filed by trial counsel and two by defendant himself.  The matter was continued to October 22, when the defendant made the Marsden motion referenced above.  After the court denied that motion, defendant immediately moved to represent himself.  The court denied the motion because it was untimely; defense counsel was prepared; there had been no breakdown in communications between defendant and counsel; and "his real reason for making such a motion is to delay and protract this trial to the prejudice of the People."

A defendant has a right under the Sixth Amendment to represent himself at trial, if he voluntarily and intelligently elects to do so.  (Faretta, supra, 422 U.S. 806, 834-836.)  However, in order to invoke an unconditional right of self-representation, defendant must assert the right "within a reasonable time prior to the commencement of trial."  (People v. Burton (1989) 48 Cal.3d 843, 852 ( Burton ).)  A motion made after this period is addressed to the sound discretion of the trial court.  (Ibid.)[9]

Our Supreme Court has not fixed "any particular time at which a motion for self-representation is considered untimely, other than that it must be a reasonable time before trial."  (People v. Clark (1992) 3 Cal.4th 41, 99.)  Nor, despite invitations to do so, has the court "adopted a rigid rule that any Faretta motion made before the actual commencement of trial is deemed timely."  (Ibid.)

People v. Windham (1977) 19 Cal.3d 121 explained that the "reasonable time" requirement is intended to prevent a defendant from "misus[ing] the Faretta mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice.  For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request."  (Id. at p. 128, fn. 5; Burton, supra, 48 Cal .3d 843, 852.)  Thus, when the motion for self-representation is made in close proximity to trial, it need not be granted unless there is some showing of reasonable cause for the lateness of the request.  (People v. Morgan (1980) 101 Cal. App.3d 523, 527-528.)

/////

---

[9]  In order to preserve the issue, defendant argues that this court should follow the federal rule, which treats as timely a motion for self-representation made before the jury is impaneled (subject to denial if the motion is made for the purpose of delay).  Our Supreme Court has declined to adopt the federal rule  (People v. Frierson (1991) 53 Cal. 3d 730, 742, fn.2 (Frierson)), and we are bound by that decision (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal. 2d 450, 455).

14

In accordance with these principles, appellate courts have upheld trial court findings of untimeliness when the request has been made on the eve of trial.  (See, e.g., Burton, supra, 48 Cal.3d 843, 853 [request untimely when made after the case had been called for trial and transferred to trial department for pretrial motions, and voir dire began the next day]; Frierson, supra, 53 Cal.3d 730, 742 [request untimely when made on the eve of trial over 10 months after counsel had been appointed]; People v. Ruiz (1983) 142 Cal .App.3d 780, 785, 790-791 [request untimely when made six days before trial, where both counsel were ready to proceed, and there was a serious witness problem confronting the prosecution]; People v. Moore (1988) 47 Cal.3d 63, 78-79 [motion untimely when made three days before trial was to begin]; People v. Morgan, supra, 101 Cal. App.3d 523, 531 [motion untimely when made at the time for jury selection]; and People v. Hall (1978) 87 Cal. App.3d 125, 131-132 [request untimely when made after case had been transferred to trial department and when the prosecutor was ready to pick a jury].)  In each of these cases, the defendant required a continuance to prepare for trial.  (Burton, supra, at p. 853; Frierson, supra, 730, 740; People v. Ruiz, supra, at p. 785; People v. Moore, supra, 47 Cal.3d at p. 78; People v. Morgan, supra, at p. 526; People v. Hall, supra, at p. 129.)  In the present case, defendant made his Faretta motion at an even later stage of the proceedings, since jury selection was in its third day.[10]  It follows that the court's determination of untimeliness is factually supported.

Because the motion was untimely, its determination was addressed to the sound discretion of the trial court.  (Burton, supra, 48 Cal.3d 843, 852; People v. Cummings (1993) 4 Cal.4th 1233, 1320.)  In considering a belated Faretta motion, the trial court should consider factors such as whether defense counsel has indicated he is not ready for trial and needs further time to prepare; the quality of counsel's representation; the defendant's prior proclivity to substitute counsel; the reasons for the request; the length and stage of the proceedings; and the disruption, or delay, which might reasonably be expected to follow the granting of the motion.  (People v. Cummings, supra, at p. 1320.)

Here, defense counsel indicated he was prepared to proceed to trial and the trial court found counsel competent to represent defendant.  Although the record before us does not reflect the reasons why defendant had been represented by several different attorneys, defendant seemed dissatisfied with their alleged lack of investigation.  Over 10 months earlier, on January 3, 2001, the court had entertained a Marsden motion in which defendant claimed his case was not being investigated adequately.  Despite

---

[10]  In denying the motion, the court noted: "[W]e're probably five or six challenges or maybe 30 or 45 minutes from actually pick[ing] this jury."

his dissatisfaction, defendant waited until the jury selection was well underway before he made his <u>Faretta</u> motion.  Further, the <u>Faretta</u> motion was filed on the heels of the court's denial of his <u>Marsden</u> motion for substitute counsel, which lends factual support to the trial court's conclusion that the motion was premised on a desire to delay the proceedings rather than on defendant's genuine desire to represent himself.  On this record, there was no abuse of discretion.  (<u>People v. Clark</u>, <u>supra</u>, 3 Cal.4th 41, 100 .)

(Opinion at 7-11.)

The United States Supreme Court has held that a criminal defendant has a constitutional right to represent himself at trial.  <u>Faretta v. California</u>, 422 U.S. 806, 832 (1975). That right is not absolute, however, as the Supreme Court has recognized: "The defendant must 'voluntarily and intelligently' elect to conduct his own defense, . . . and most courts require him to do so in a timely manner."  <u>Martinez v. Court of Appeal</u>, 528 U.S. 152, 161-62 (2000).  The Ninth Circuit Court of Appeals has determined that "a timeliness element in a <u>Faretta</u> request is 'clearly established Federal law, as determined by the Supreme Court.'"  <u>Marshall v. Taylor</u>, 395 F.3d 1058, 1061 (9th Cir. 2005) (quoting <u>Moore v. Calderon</u>, 108 F.3d 261, 265 (9th Cir. 1997), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Williams</u>, 529 U.S. at 412- 13).  Specifically, a request to represent oneself made "well before the date of trial" and "weeks before trial" is timely.  <u>Id.</u> However, "[b]ecause the Supreme Court has not clearly established when a <u>Faretta</u> request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely.'"  <u>Id.</u>

Petitioner's request to represent himself, which was made on the morning of trial, as voir dire was already well underway, fell well inside the "weeks before trial" standard set forth in <u>Faretta</u>.  Under these circumstances, the California Court of Appeal was not objectively unreasonable in concluding that petitioner's motion for self-representation was untimely.  <u>See</u> <u>Stenson v. Lambert</u>, 504 F.3d 873, 884 (9th Cir. 2007) ("[t]he Supreme Court has never held that <u>Faretta</u>'s 'weeks before trial' standard requires courts to grant requests for self-representation coming on the eve of trial"; therefore, state court's "determination that [petitioner's] request to

1  proceed pro se [which first came on the twentieth day of voir dire and on the verge of jury

2  impanelment] was untimely is not objectively unreasonable under AEDPA"); Marshall, 395 F.3d

3  at 1061 (Faretta request untimely where made on the morning of his trial but prior to jury

4  selection); Baker v. Yates, No. 04-CV-1533 H(BLM), 2007 WL 2156072, *9-10 (S.D. Cal., Jul.

5  25, 2007) (state court did not unreasonably apply Faretta in denying as untimely motion for

6  self-representation which was made the day trial was scheduled to begin).

7          The California Court of Appeal also concluded that petitioner's Faretta motion

8  was properly denied on the basis that it was made for the purpose of delay.  The Ninth Circuit has

9  held that to preserve the right to self-representation, a defendant must make a timely and

10  unequivocal request in that regard which is not a tactic to secure delay.  Armant v. Marquez, 772

11  F. 2d 552, 555 (9th Cir. 1985).  In deciding whether a timely request was otherwise made for the

12  purpose of delay, the court must examine the events preceding the request to determine if they

13  are consistent with a good faith assertion of the Faretta right and whether the defendant could

14  reasonably be expected to have made the request at an earlier time.  Fritz v. Spalding, 682 F.2d

15  782, 784-85 (9th Cir. 1982).  If a defendant accompanies his motion to proceed with a request for

16  a continuance "[this] would be strong evidence of a purpose to delay."  Id.  See also Hirschfield

17  v. Payne, 420 F.3d 922, 927 (9th Cir. 2005) (state court was not unreasonable in concluding that

18  a Faretta motion was made in order to delay the proceedings where the defendant requested self-

19  representation one day before trial was scheduled to begin, he had moved to substitute counsel on

20  four previous occasions, and admitted that every time he asked for a new attorney it was "close to

21  trial").

22          Although the Faretta decision itself did not mention the issue of delay, the

23  conclusion of the Ninth Circuit that a Faretta motion may be denied if it is interposed for

24  purposes of delay does not appear to be "contrary to" or an "unreasonable application" of the

25  holding in  Faretta.  Therefore, even if petitioner's request for self-representation had been timely

26  made, the trial court could have properly denied the motion as a tactic being employed to delay

17

the trial.  Although petitioner complained that his trial counsel had failed to investigate and

produce witnesses, petitioner did not specify who those witnesses were or describe the substance

of their testimony.  Petitioner's trial counsel stated that he was ready to proceed with the trial.

There is no reason apparent from the record why petitioner could not have made his request to

represent himself earlier in the proceedings.  As noted by the California Court of Appeal,

petitioner had complained about his trial counsel's failure to investigate potential witnesses

several times prior to the trial date and could have requested self-representation then.  Finally,

although petitioner states that he did not move for self-representation in order to delay the

proceedings, a continuance of the trial would almost certainly have been necessary to allow

petitioner to investigate possible percipient witnesses and to otherwise prepare.[11]  All of these

factors provide support for the trial court's conclusion that petitioner's <u>Faretta</u> motion was

interposed for purposes of delay.

For the foregoing reasons, the state appellate court's conclusion that petitioner's

<u>Faretta</u> motion was properly denied is not contrary to or an unreasonable application of federal

law.  Accordingly, petitioner is not entitled to relief on a claim that he was denied his right to

represent himself.  28 U.S.C. § 2254(d).

C. <u>Cruel and Unusual Punishment</u>

Petitioner claims that his sentence of 25 years to life in state prison for a "minor

incident," where his prior criminal history was only "drug related," constitutes cruel and unusual

punishment under the California Constitution.  (Pet. at 6.)

The California Court of Appeal rejected this argument on state law grounds.

(Opinion at 11-14.)  That court specifically found that petitioner was not making a claim that his

sentence constituted cruel and unusual punishment under the federal Constitution.  (<u>Id.</u> at 11 n.6.)

---

[11]   At the hearing on petitioner's motion for new trial, his counsel essentially conceded
that a continuance of the trial would have been necessary if petitioner had been allowed to
represent himself.  (RT at 374-75.)

18

As discussed above, federal habeas corpus is not available for alleged error in the interpretation or application of state law. Estelle, 502 U.S. at 67-68. Federal courts will not review an interpretation by a state court of its own laws unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution. See Mullaney v. Wilbur, 421 U.S. 684, 691 n.11 (1975); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas court must defer to the state court's construction of its own penal code). The decision of the California Court of Appeal is not untenable and does not amount to a subterfuge to avoid federal review. Accordingly, petitioner is not entitled to relief on his claim that his sentence violates the California Constitution.

Even if evaluated under federal law, petitioner is not entitled to relief on a claim that his sentence constitutes cruel and unusual punishment. Petitioner was convicted of battery and being a prisoner in possession of a weapon. His prior criminal history was described by the California Court of Appeal as follows:

> According to the probation report, defendant's initial contact with the adult criminal justice system occurred in 1993, when defendant was 20 years old. He was convicted of trespassing in a public park, for which he served 45 days in jail. That same year, defendant was stopped for drinking in public, and found to be in possession of a handgun with obliterated serial numbers. Following his release from jail, defendant was observed drinking in public. He was arrested on outstanding traffic warrants and found to be in possession of rock cocaine. Following these offenses defendant was deported to Mexico in 1994, but he reentered the United States illegally later that year. Upon his return to this country, he robbed one person and attempted to rob another, resulting in an aggregate prison term of five years eight months, which he commenced serving in October 1994. While in prison, he committed numerous disciplinary infractions, which "maxed out" his confinement time. Defendant eventually was paroled to the Sacramento County jail in May 2000, where he committed four serious rule violations, including one gang-related incident.

(Opinion at 12-13.)

1    Although petitioner complains that this description of his prior criminal history is

2    "slightly wrong and somewhat excessive," (traverse at 24), the state appellate court's summary is

3    essentially correct.  (See Traverse at 24-25; CT at 226-228.)  Under these circumstances,

4    petitioner's sentence under California's Three Strikes Law does not constitute cruel and unusual

5    punishment when considered under Eighth Amendment standards.  See Lockyer v. Andrade, 538

6    U.S. 63, 77 (2003) (two consecutive twenty-five years to life sentences with the possibility of

7    parole, imposed in that case under California's Three Strikes Law following two petty theft

8    convictions with priors, did not amount to cruel and unusual punishment); Ewing v. California,

9    538 U.S. 11 (2003) (a sentence of twenty-five years to life in state prison imposed for felony

10   grand theft under California's Three Strikes law did not violate the Eighth Amendment);

11   Harmelin v. Michigan, 501 U.S. 957, 1004-05 (1991) (life imprisonment without possibility of

12   parole for possession of 24 ounces of cocaine was not cruel and unusual).  Therefore, petitioner

13   is not entitled to relief on any possible claim that the sentence imposed upon him constitutes

14   cruel and unusual punishment in violation of the Eighth Amendment.

15       D.  Evidentiary Hearing

16       Petitioner requests an evidentiary hearing on all of his claims.  (Traverse at 2.)

17   Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary

18   hearing must first determine whether a factual basis exists in the record to support a petitioner's

19   claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme,

20   187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir.

21   2005; Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  Of course, a federal

22   habeas petitioner must also "allege[] facts that, if proved, would entitle him to relief."  Schell v.

23   Witek, 218 F.3d 1017, 1028 (9th Cir. 2000) (en banc).  See also Ortiz v. Stewart, 149 F.3d 923,

24   934 (9th Cir. 1998); Morris v. Castro, No. CIV S-01-1567 DAD P, 2006 WL 2785718, *33, n.15

25   (E.D. Cal. Sept. 26, 2006).

26   /////

20

1    Here, petitioner has not demonstrated that any additional facts need to be

2  determined in order to resolve the claims raised in the petition before the court.  Further, this

3  court has determined that relief as to petitioner's claims should be denied on the merits because

4  the state court's decision was not contrary to, or an unreasonable application of, clearly

5  established federal law or based on an unreasonable determination of the facts.  Accordingly, an

6  evidentiary hearing is not warranted with respect to petitioner's claims.  See Williams, 529 U.S.

7  at 444; Earp, 431 F.3d 1166-67.

8                                    CONCLUSION

9    For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

10 application for a writ of habeas corpus be denied.

11   These findings and recommendations are submitted to the United States District

12 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13 days after being served with these findings and recommendations, any party may file written

14 objections with the court and serve a copy on all parties.  Such a document should be captioned

15 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16 shall be served and filed within ten days after service of the objections.  The parties are advised

17 that failure to file objections within the specified time may waive the right to appeal the District

18 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19 DATED: February 25, 2009.

20

21                                         _____

22                                         DALE A. DROZD
                                           UNITED STATES MAGISTRATE JUDGE
23 DAD:8
   cazares625.hc

24

25

26

                                           21